UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIM. NO. 05-300 /4 -MAP |
| ) | |
| vs. ) | VIOLATIONS: |
| ) | |
| PAUL STARNES, ) | 18 U.S.C. §§ 1343 and 2 - |
| MARC BROWN, and, ) | Wire Fraud and Aiding and |
| DAVID MCCOY, ) | Abetting (Counts One through |
| ) | Twelve) |
| Defendants. ) | |
| | 18 U.S.C. §§ 1956(h) and 1957 - |
| | Conspiracy to Launder Money |
| | (Count Thirteen) |
| | |
| | 18 U.S.C. § 982 - |
| | Forfeiture Allegation |

The Grand Jury charges:

## INDICTMENT

**COUNT ONE:**   Title 18, United States Code, Sections 1343 and 2 - Wire Fraud and Aiding and Abetting

### Introduction

### Entities and Parties Involved

At all times relevant to this Indictment:

1.   Paul Starnes (hereinafter referred to as "Starnes") formerly owned Trinity Mortgage Brokerage, Inc. (hereinafter "Trinity Mortgage"), located at 146 Chestnut Street, Springfield, MA. Starnes assisted co-conspirators, some of whom have been charged separately, in obtaining fraudulent loans for prospective buyers through various lending institutions. Starnes also was a

1

partner in Trinity Land Company, an entity that purchased and sold real estate in the greater Springfield area.

2. Marc Brown (hereinafter "Brown") formerly worked as a mortgage broker for Trinity Mortgage. Brown also assisted co-conspirators, some of whom have been charged separately, in obtaining loans for prospective buyers from various lending institutions. Starnes paid Brown on a commission basis.

3. David McCoy (hereinafter "McCoy") formerly worked as a mortgage broker for Trinity Mortgage. McCoy also assisted co-conspirators, some of whom have been charged separately, in obtaining loans for prospective buyers from various lending institutions. McCoy also received his pay on a commission basis.

### The Scheme to Defraud

4. From approximately 1995, the exact beginning date being unknown to the Grand Jury, and continuing thereafter through at least May, 2002, in the District of Massachusetts and elsewhere,

**PAUL STARNES,**
**MARC BROWN,**
**and**
**DAVID MCCOY,**

defendants herein, having devised a scheme and artifice to defraud and obtain money from various lending institutions by means of false pretenses, representations, and promises, and material omissions, did cause to be transmitted in interstate commerce by wire loan proceeds for the purpose of executing, and attempting to execute, the said scheme and artifice to defraud in

violation of Title 18, United States Code, Sections 1343.

### The Object of the Scheme to Defraud

The objects of the conspiracy included, but were not limited to, the following:

5. to fraudulently obtain money from various lending institutions by means of false and fraudulent pretenses, representations, and promises and material omissions contained in, among other things, loan applications, employment documents, down payment documents, second mortgages, HUD Settlement Statements and other real estate closing documents.

6. to conceal and perpetuate the scheme to defraud through, among other things, the use of false representations, incentive payments, hidden ownership interests in real estate, and structuring of financial instruments.

### The Means and Methods of the Scheme to Defraud

7. Co-conspirators purchased distressed properties typically located within low-income neighborhoods and re-sold the properties rapidly at artificially inflated values. Co-conspirators commonly used individuals known as "runners" to recruit prospective buyers and paid finder's fees averaging approximately $2,000.00 to such individuals for the successful sale of property.

8. As an inducement to the prospective buyers, the defendants and their co-conspirators represented to prospective

3

buyers that they would not have to make any down payments even though the lending institutions typically required a buyer to make such a down payment. In addition, the defendants and their co-conspirators promised prospective buyers money back at the time of a real estate closing or represented that they would make certain repairs to a property prior to the closing.

9. Various co-conspirators, who had established business relationships with Trinity Mortgage and other mortgage brokers, referred many of their prospective buyers to Trinity Mortgage for loans. Since many of the prospective buyers did not have the financial wherewithal to qualify for loans, the defendants and their co-conspirators generated and then processed false and fraudulent loan applications and other documentation through various lending institutions to obtain loans for the prospective buyers.

10. For example, the defendants and their co-conspirators generated false and fraudulent documentation that made it appear as if the prospective buyers made down payments that were never really made. The defendants and their co-conspirators generated false and fraudulent income information that artificially inflated the true income of the prospective buyers. The defendants and their co-conspirators created false and fraudulent documentation to show improvements to the properties that were never made. The defendants and their co-conspirators

generated bogus second mortgages to assist in securing loans from the lending institutions. Co-conspirators also created false and fraudulent appraisals to support the loan amounts for artificially inflated property values. In exchange, the defendants received not only continued business, but also "incentive" payments in the form of cash or checks, or hidden interests in real estate deals, none of which were disclosed to the lending institutions.

11. Once the various lending institutions approved the loan applications of the prospective buyers, the defendants and their co-conspirators referred the prospective buyers to a Springfield area attorney (hereinafter "the attorney"). The attorney generated false and fraudulent real estate closing documentation to facilitate and conceal the fraud. In exchange, the attorney received not only continued business, but also "incentive" payments in the form of cash or checks, or hidden interests in real estate deals, none of which were disclosed to the lending institutions.

12. The attorney then received the loan proceeds from the various out-of-state lending institutions via wire transfer into his IOTLA account. The attorney subsequently disbursed the net profits from the fraudulent real estate transactions by issuing checks out of his IOLTA account to the defendants and their co-conspirators. The attorney then mailed a complete real estate

closing file back to the lending institution that had funded a particular loan. The defendants and their co-conspirators then used the profits derived from the scheme to defraud to re-invest in Trinity Mortgage and purchase more real estate, among other things.

### The Wire Fraud

13. On or about the dates listed below, in the District of Massachusetts and elsewhere,

**PAUL STARNES,
MARC BROWN,
and
DAVID MCCOY,**

defendants herein, having devised the above-described scheme and artifice to defraud and obtain money by means of false pretenses, representations, and promises, and material omissions, did cause the following lending institutions to transmit in interstate commerce by wire the following approximate amounts of loan proceeds for the purpose of executing, and attempting to execute, the said scheme and artifice to defraud.

| Count | Date | Defendant | Act of Wire Fraud |
|---|---|---|---|
| 1 | 04/03/00 | STARNES BROWN MCCOY | fraudulently caused Homestead Funding Corporation to wire approximately $81,000.00 into the attorney's IOLTA account for the sale of 21 Waverly Street, Springfield, MA |

6

| 2 | 05/08/00 | STARNES BROWN MCCOY | fraudulently caused Aames Funding Corporation to wire approximately $63,600.00 into the attorney's IOLTA account for the sale of 172 Lebanon Street, Springfield, MA |
| --- | --- | --- | --- |
| 3 | 07/28/00 | STARNES BROWN MCCOY | fraudulently caused Equicredit to wire approximately $69,317.00 into the attorney's IOLTA account for the sale of 801 Worthington Street, Springfield, MA |
| 4 | 09/08/00 | STARNES BROWN MCCOY | fraudulently caused Equicredit to wire approximately $72,000.00 into the attorney's IOLTA account for the sale of 30-32 Lebanon Street, Springfield, MA |
| 5 | 09/11/00 | STARNES BROWN MCCOY | fraudulently caused Equicredit to wire approximately $72,000.00 into the attorney's IOLTA account for the sale of 100-104 Greene Street, Springfield, MA |
| 6 | 09/18/00 | STARNES BROWN MCCOY | fraudulently caused Equicredit to wire approximately $85,500.00 into the attorney's IOLTA account for the sale of 193 Draper Street, Springfield, MA |
| 7 | 10/06/00 | STARNES BROWN MCCOY | fraudulently caused Success Investments, Inc. to wire approximately $60,000.00 into the attorney's IOLTA account for the sale of 199-201 Orange Street, Springfield, MA |
| 8 | 12/21/00 | STARNES BROWN MCCOY | fraudulently caused Delta Funding, Inc. to wire approximately $69,700.00 into the attorney's IOLTA account for the sale of 28-30 Aster Street, Springfield, MA |

| 9 | 12/21/00 | STARNES BROWN MCCOY | fraudulently caused Delta Funding, Inc. to wire approximately $69,700.00 into the attorney's IOLTA account for the sale of 32-34 Aster Street, Springfield, MA |
| 10 | 02/16/01 | STARNES BROWN MCCOY | fraudulently caused Alliance Funding to wire approximately $64,000.00 into the attorney's IOLTA account for the sale of 154 Oak Grove Avenue, Springfield, MA |
| 11 | 08/15/01 | STARNES BROWN MCCOY | fraudulently caused National City Mortgage to wire approximately $91,800.00 into the attorney's IOLTA account for the sale of 126 Harvard Street, Springfield, MA |
| 12 | 09/26/01 | STARNES BROWN | fraudulently caused Success Investments, Inc. to wire approximately $81,000.00 into the attorney's IOLTA account for the sale of 292 Stapleton Road, Springfield, MA |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT THIRTEEN:**          Title 18, United States Code, Sections 1956(h) and 1957 - Conspiracy to Launder Money

14. The Grand Jury re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 13.

15. From at least 1995, the exact beginning date being unknown to the Grand Jury, and continuing thereafter through at least May, 2002, in the District of Massachusetts and elsewhere,

**PAUL STARNES,**
**MARC BROWN,**
and
**DAVID MCCOY,**

defendants herein, did unlawfully and knowingly combine, conspire, confederate, and agree with each other and other persons both known and unknown to the Grand Jury to commit an offense against the United States, that is, to knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, that is, the withdrawal of funds, such property having been derived from a specified unlawful activity, which was wire fraud, a violation of Title 18, United States Code, Section 1343, by check from the IOLTA account of the attorney.

### The Object of the Conspiracy

The object of the conspiracy was:

16. to facilitate the wire fraud scheme by paying the costs

of the various third parties involved in the real estate transactions and distributing the net profits of the wire fraud scheme to the defendants and co-conspirators for outstanding obligations and investment in future real estate transactions.

**Overt Acts in Furtherance of the Conspiracy**

17. As a part of and in furtherance of the above-described conspiracy and to accomplish the objects and purposes thereof, defendants herein and their co-conspirators did commit and cause to be committed overt acts, including, but not limited to, the following:

| Act | Date | Defendant | Overt Act in Furtherance |
|---|---|---|---|
| 1 | 12/10/99 | STARNES | fraudulently caused Accubanc Mortgage to wire approximately $99,000.00 into the attorney's IOLTA account for the sale of 241 Oak Street, Holyoke, MA |
| 2 | 01/04/00 | STARNES | fraudulently caused DiverseAmerican Mortgage to wire approximately $48,750.00 into the attorney's IOLTA account for the sale of 7 Searle Place, Springfield, MA |
| 3 | 01/25/00 | BROWN | fraudulently caused Equicredit Corporation to wire approximately $72,375.00 into the attorney's IOLTA account for the sale of 21 Marble Street, Springfield, MA |
| 4 | 01/27/00 | MCCOY | fraudulently caused Equicredit Corporation to wire approximately $68,800.00 into the attorney's IOLTA account for the sale of 152-154 King Street, Springfield, MA |

| 5 | 02/27/00 | MCCOY | fraudulently caused Equicredit Corporation to wire approximately $73,850.00 into the attorney's IOLTA account for the sale of 95-97 Genesee Street, Springfield, MA |
| 6 | 03/07/00 | MCCOY | fraudulently caused Equicredit Corporation to wire approximately $63,750.00 into the attorney's IOLTA account for the sale of 189 Bay Street, Springfield, MA |
| 7 | 03/08/00 | MCCOY | fraudulently caused DiverseAmerican Mortgage to wire approximately $62,400.00 into the attorney's IOLTA account for the sale of 104 Eastern Avenue, Springfield, MA |
| 8 | 03/29/00 | BROWN MCCOY | fraudulently caused DiverseAmerican Mortgage to wire approximately $69,750.00 into the attorney's IOLTA account for the sale of 404-406 Franklin Street, Springfield, MA |

18.  The Grand Jury re-alleges and incorporates by reference Counts One through Twelve as additional overt acts as a part of and in furtherance of the above-described conspiracy.

All in violation of Title 18, United States Code, Section 1956(h), and Title 18, United States Code, Section 1957.

## 18 U.S.C. § 982 - Criminal Forfeiture

1.  Counts One through Thirteen of the Indictment are hereby realleged and incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

As a result of the offenses alleged in Counts One through Thirteen,

**PAUL STARNES,
MARC BROWN,
and
DAVID MCCOY,**

defendants herein, shall forfeit any property, real or personal, involved in such offense, or any property traceable to such property. The property subject to forfeiture includes, but is not limited to, at least $1,500,000.00.

2.  If any of the forfeitable property described in paragraph 1 above, as a result of any act or omission of the defendant --

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which

cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in subparagraphs (a) through (e) of this paragraph.

All in violation of Title 18, United States Code, Section 982.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS: _____March 31_____, 2005

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK OF THE COURT

3:05 PM

14