```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,    )   CR-N-05-30014-MAP
                             )
         v.                  )
                             )
DAVID MCCOY,                 )
                             )
              Defendant.     )
```

## GOVERNMENT'S RESPONSE TO
## DEFENDANT MCCOY'S OBJECTIONS TO PRESENTENCE REPORT

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William M. Welch II, Assistant United States Attorney, hereby files this response to the defendant's Objections to the Presentence Report.  The Government intends to address only those objections that have some bearing on the Guideline calculations.

   A.   <u>Objection to Loss Calculation</u>

   The defendant first objects to the inclusion of certain properties in the overall fraud calculation.  According to the Government's factual submission to the U.S. Probation Office, the following loans were attributable to McCoy:

> All of the loans alleged in the indictment beginning with 152-154 King Street except for the Waverly Street property, the two Aster Street property, and the Harvard Street property have been attributed to McCoy.  McCoy had no involvement in those four transactions, which were exclusively Starnes deals.  The total amount of

1

>   fraudulent loans for which McCoy can be held
>   responsible equals $905,967.00.

Therefore, the only properties that the Government had agreed not to attribute to defendant McCoy were 241 Oak Street (Overt Act 1); 7 Searle Place (Overt Act 2); 21 Marble Street (Overt Act 3); 21 Waverly Street (Count 1); 28-30 Aster Street (Count 8); 32-34 Aster Street (Count 9); and 126 Harvard street (Count 11). The total amount of fraud for the remaining loans equaled $905,967.00.

The notion that the court should not credit defendant McCoy for the fraudulent loans obtained for 801 Worthington, 30-32 Lebanon, 100-104 Greene Street, 193 Draper, 154 Oak Grove, and 292 Stapleton is ridiculous.  As the Probation Report makes clear, defendant McCoy had some involvement in each and every one of those real estate transactions. See e.g. Presentence Report, ¶s 102 through 104 (801 Worthington); ¶ 108 (30-32 Lebanon); ¶s 153 through 158 (292 Stapleton).  Although not specifically referenced in the descriptions of 100-104 Greene Street, 193 Draper, and 154 Oak Grove, defendant McCoy and co-defendant Brown were partners in these deals and split the profits 50/50 even though co-defendant Innarelli may have issued a check only in co-defendant Brown's name. See Presentence Report, ¶s 50, 51.

Defendant McCoy also claims that, pursuant to Application Note 2(E)(ii) of U.S.S.G. §2B1.1, the court should give defendant McCoy credit for all collateral pledged by the victims and the

amount that the victims have recovered at the time of sentencing. Defendant McCoy's position, however, does not comport with the law or the facts.

"Loss is a proxy for the seriousness of the offense." United States v. Parsons, 141 F.3d 386, 392 (1st Cir. 1998). "[T]he fraud guideline commentary has always provided that where the intended loss is greater than the actual loss, the intended loss is to be used." Id. Where settlement has been made after the crime has been detected, "the later settlement does not reduce [the defendant's] culpability." Id. "[A] defrauder cannot purchase a shorter term by a belated return of the proceeds when the fraud is in the course of unraveling." Id. at 292-293 (citing United States v. Bennett, 37 F.3d 687, 695 (1st Cir. 1994)).

In United States. v. McCormac, 309 F.3d 623 (9th Cir. 2002), the Ninth Circuit addressed the precise issue that defendant Starnes raises at his sentencing. In McCormac, the defendant claimed that Application Note 2(E)(ii) required the court to reduce her intended loss figure by the amount of collateral pledged to secure the loan. The Ninth Circuit rejected that argument, holding that "Application Note 2(E)(ii) is consistent with this circuit's, and our sister circuits', application of the `greater of' rule when we read it to affect the calculation of actual loss, but not intended loss." Id. at 629.

The Ninth Circuit reasoned that Application Note 2(E)(ii)

affected actual loss, but not intended loss, because

> Application Note 2(A) provides: `Subject to the exclusions in subdivision (D), loss is the greater of the actual loss or intended loss." U.S. Sentencing Guidelines Manual,§ 2B1.1, cmt. n. 2(A) (2001). Were we to exclude the amount recovered by disposition of collateral in both an actual loss and intended loss calculation, we would essentially read the general rule subject to the exclusions in subdivision (D) and (E), even though the sentencing commission has explicitly limited the exclusions to those enumerated in subdivision (D) only.

Id. at 628. In addition, the Ninth Circuit concluded that

> the 2001 amendments adopt a broad definition of `intended loss.' Intended loss includes the `pecuniary harm that was intended to result from the offense,' whether or not that pecuniary harm "would have been impossible or unlikely to occur." U.S. Sentencing Guidelines Manual § 2B1.1, cmt. n. 2(A)(ii) (2001). *See also* U.S. Sentencing Guidelines Manual app. C at 1205 (the broad definition of intended loss precludes using concepts such as "economic reality" in determining intended loss). Under this definition, it is irrelevant to the intended loss calculation that a bank is unlikely to suffer the total intended loss when a defendant pledges collateral to secure a loan. To the extent that collateral pledged to secure a loan informs the loss calculation, it affects the calculation of the actual loss and may illuminate the determination of the defendant's intent. *See, e.g.,* United States v. Williams, 292 F.3d 681, 686 (10th Cir. 2002)(recovered assets are not automatically deducted from intended loss but collateral pledged "is a valid consideration in evaluating a defendant's realistic intent") (citations omitted).

Id. Finally, the Ninth Circuit stated that "the 2001 amendments

4

to the sentencing guidelines for fraud make clear that intended loss should not be an inquiry into intent to repay, as suggested by case law interpreting the prior sentencing guideline, but rather should focus on the intended financial harm." Id. at 629. In making its decision, the Ninth Circuit joined several other circuits. See United States v. Nichols, 229 F.3d 975, 979 (10th Cir. 2000)("The fact that a victim has recovered part of its loss after discovery of a fraud does not diminish the defendant's culpability for purposes of sentencing"); United States v. Johnson, 16 F.3d 166, 170-71 (7th Cir. 1994)(even if the victim was able to recoup some of the loss, the Guidelines direct that intended loss should be considered if it is greater than the actual loss); United States v. Johnson, 908 F.2d 396, 398 (8th Cir. 1990)(the offense level does not turn on whether the banks recovered any of their losses, but turns on the loss the defendant attempted to inflict).

Therefore, the U.S. Probation Office got it right when it calculated defendant McCoy's loss based upon intended loss, not actual loss, because the intended loss figure was greater. As a result, Application Note 2(E)(ii) is inapplicable to the intended loss calculation. Accordingly, the court should reject defendant McCoy's loss calculation as contrary to the Sentencing Guidelines as well as First Circuit law.

In addition, Application Note 2(E)(ii) is inapplicable to

the facts of this case because Note 2(E)(ii) clearly limits its application to the pledge of collateral "by the defendant." Defendant McCoy never pledged any collateral in this case. Instead, defendant McCoy wants to ride on the back of his victims and claim that their pledge of collateral in the form of mortgages satisfies Application Note 2(E)(ii). It does not, nor should it.

Application Note 2(E)(ii) permits mitigation in those situations where the defendant has assumed some financial risk when engaging in fraud. In this case, defendant McCoy assumed absolutely <u>no</u> financial risk, yet wants to reduce his loss figures based upon the hardship and misfortunes of his victims. This is a result that the Sentencing Commission surely never intended nor envisioned.

    B  <u>Objection to the Number of Victims</u>

Defendant McCoy concedes that there were eight financial institutions who were victims. He maintains, however, that none of the individual buyers were victims, apparently because they did not suffer any reasonably foreseeable pecuniary harm.

The problem with this argument is that all of the individual buyers suffered pecuniary harm that was reasonably foreseeable to defendant McCoy. For example, defendant McCoy knew that all of the victims were buying homes whose values were deliberately inflated anywhere from 100% to 200% and, consequently, making

monthly mortgage payments that were 100% to 200% greater than they should have been. None of the victims were ever told that they were buying homes whose values were deliberately inflated.

Therefore, even under defendant McCoy's interpretation of victim, he must concede that the individual buyers suffered reasonably foreseeable pecuniary harm in the form of unnecessarily higher monthly mortgage payments based upon a lack of corresponding value. Under this scenario, the number of individual buyers plus financial institutions easily exceeds the threshold of ten victims needed for the two level enhancement.

    C.   <u>Objection to the Abuse of Trust Enhancement</u>

Defendant McCoy had a fiduciary duty to the financial institutions from whom he received his broker fee. They paid defendant McCoy to act as their eyes and ears and gather the necessary financial documents that the financial institution needed in order to decide whether or not a borrower qualified for a loan. The financial institutions based their ultimate decision upon the accuracy of that information and the trust that they placed in defendant McCoy to forward to them truthful and accurate financial information. Defendant McCoy violated that trust by deliberately including false information in the borrowers' financial loan packages and forwarding that information to the lenders.

Filed this 6th day of July, 2006.

                        Respectfully submitted,

                        MICHAEL J. SULLIVAN
                        United States Attorney


                        _____/s/ William M. Welch II_____
                        WILLIAM M. WELCH II
                        Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                              Springfield, Massachusetts
                                          July 6, 2006


I, William M. Welch, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by electronic service upon:

Peter L. Ettenberg, Esq.
Gould & Ettenberg
370 Main Street
Worcester, MA  01608

Charles W. Groce III, Esq.
1350 Main Street
10th Floor
Springfield, MA  01103

J. Jeffrey Yelle, Esq.
1365 Main Street
Springfield, MA  01103


                                    /s/ William M. Welch II
                                    WILLIAM M. WELCH II
                                    Assistant United States Attorney