# United States Court of Appeals
## For the First Circuit

No. 06-2138

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID McCOY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Lynch, Circuit Judges.

Jeanne M. Kempthorne on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, and Michael J. Sullivan, United States Attorney, on brief for appellee.

November 27, 2007

**BOUDIN**, <u>Chief Judge</u>.  David McCoy appeals from the 46 month prison sentence imposed on him after he pled guilty to two counts of wire fraud, 18 U.S.C. § 1343 (2000), and one count of conspiracy to launder money, <u>id.</u> §§ 1956(h), 1957.  In substance, McCoy and his fellow conspirators engaged in a scheme by which fraudulent mortgage loans were used to sell property to purchasers.

After purchasing a condemned or nearly uninhabitable property in Springfield, Massachusetts, usually at auction, the conspirators would arrange for a grossly inflated appraisal of the property; obtain a mortgage loan--based on fraudulent documentation and the fraudulent appraisal--for an unsophisticated buyer with low income, bad credit or both; and then sell the property to the buyer and split the profits among the participants in the scheme (including the appraiser, the mortgage broker, the real estate lawyer, etc.).

Those who bought the homes were left with artificially inflated mortgages and usually defaulted; the banks were generally unable to recoup the full value of their loans because the foreclosed homes were worth less than the false appraisals had indicated.  The scheme unraveled and McCoy, who had acted as one of the mortgage brokers, was charged with twelve counts of wire fraud as to transactions occurring mostly in 2000 and 2001.  He was also charged with conspiracy to launder the proceeds of the scheme.

Pursuant to a plea agreement, McCoy pled guilty in January 2006 to two of the fraud counts and to the money laundering count.  As part of the plea agreement, the government agreed to request a prison sentence within the range appropriate under the sentencing guidelines; the agreement also set forth both parties' positions on some (but not all) of the issues expected to arise in applying the guidelines to the case.  On some of these issues the parties agreed but others were disputed.  The plea bargain also included a (partial) waiver of McCoy's right to appellate review.

In July 2006, the district judge sentenced McCoy to 46 months in prison.[1]  A driving element under the guidelines is the magnitude of the loss intended or inflicted.  U.S.S.G. § 2B1.1(b)(1) (2001).  The district judge calculated the estimated loss to the banks by subtracting from the amounts of the fraudulently obtained mortgage loans the amounts that the conspirators had paid for the properties--treating the latter as a proxy for their value as security.  He rejected McCoy's position that the subtracted figure should be the often higher amounts <u>recovered</u> by the banks through foreclosure or other means.

---

[1]The district judge used the 2001 version of the sentencing guidelines, which (according to the presentence report) were in effect during the last offense for which McCoy was convicted (the money laundering) and were more favorable to McCoy than those in effect at sentencing.  See generally U.S.S.G. § 1B1.11.  McCoy says that on remand or by collateral attack, he wishes to argue for use of the 2000 version, challenging the premise that the offense continued after the effective date of the 2001 guidelines; we note only that this may contradict the indictment to which he pled.

The district judge, using his loss formula rather than McCoy's, computed the total loss figure at between $400,000 and $1,000,000--one of the brackets under the guideline. Combined with McCoy's criminal history level--which the judge reduced from III to II on the grounds that higher level "overstated" the nature of the prior criminal history--that loss value corresponded to a final sentencing range of 41 to 51 months. McCoy's sentence of 46 months fell in the middle of that range.

After McCoy filed a timely appeal, this court noticed that the district judge appeared to have made a mathematical error in computing the amount of loss--even under the formula he had articulated. In supplemental memoranda we requested, both parties agreed; the district judge's formula, correctly computed, would have resulted in a loss slightly under $ 400,000[2] and a sentencing range of 33 to 41 months. So on top of McCoy's original ground of appeal, we have to decide what to do about the mathematical error.

Before reaching the merits we must consider whether McCoy waived his right to bring this appeal. In this circuit, an appeal waiver is enforceable if the defendant knowingly and voluntarily agreed to its terms and enforcement would not result in miscarriage of justice. United States v. Teeter, 257 F.3d 14, 24-26 (1st Cir.

---

[2]The parties do not agree on a precise figure, primarily due to ambiguity over which properties the district judge intended to include in his aggregate amount; but all agree that the corrected figure is within the $200,000 to $400,000 bracket. U.S.S.G. § 2B1.1(b)(1)(G).

-4-

2001). The parties debate whether these requirements are met here, but it is not necessary to reach the enforceability question because the waiver provision does not apply.

Even a knowing and voluntary appeal waiver only precludes appeals that fall within its scope. See United States v. Behrman, 235 F.3d 1049, 1052 (7th Cir. 2000). Waivers of appeal vary considerably in their language and the scope of the waiver is simply a matter of what the parties agreed to in the particular case. We turn to the language of the plea agreement between McCoy and the government.

> Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge: . . . (2) The adoption by the District Court at sentencing of any of the positions found in Paragraph 3 which will be advocated by the U.S. Attorney . . . and (3) The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney, as set out in Paragraph 4 and, even if the Court rejects one or more positions advocated by the U.S. Attorney or Defendant with regard to the application of the U.S. Sentencing Guidelines.

The waiver denominated (2) is irrelevant. Paragraph 3 of the agreement lists the positions of the parties with respect to some of the guideline application issues, but as to how offsets to loss (from the mortgaged collateral) are to be measured, it only states that "the defendant may present evidence of credits against this loss figure at sentencing pursuant to the § 2B1.1 Application

Notes."  Paragraph 3 says nothing about the government's position on the calculation of credits.

As to the subparagraph (3) waiver, its terms preclude the defendant from appealing from any sentence at or below "the recommendation of the U.S. Attorney, as set out in Paragraph 4." But that paragraph sets forth no proposed sentence or sentencing range: it merely provides that the government will request "[i]ncarceration within the guideline range."  The effect of the agreement in this respect is therefore to preclude McCoy from challenging any sentence that falls "within the guideline range."

McCoy's arguments on appeal are that, by both a legal error and a mathematical mistake, the district court mis-measured the loss and so misapplied the guidelines; if he is correct, then his sentence was not "within the guideline range" and his appeal is not barred by the waiver.  We agree with the Fourth Circuit that a waiver forgoing "any appeal . . . if the sentence imposed herein is within the guidelines" does not waive the right to appeal an alleged misapplication of the guidelines.  United States v. Bowden, 975 F.2d 1080, 1081 n.1 (4th Cir. 1992), cert. denied, 507 U.S. 945 (1993).[3]

---

[3] Accord United States v. Williams, 1997 U.S. App. LEXIS 7639, at *6-*11 (9th Cir. Apr. 15, 1997).  But see United States v. Holland, 214 Fed. Appx. 957, 958 n.3 (11th Cir.) (per curiam), cert. denied, 76 U.S.L.W. 3163 (2007); United States v. Bickerstaff, 2000 U.S. App. LEXIS 25641, at *8-*10 (6th Cir. 2000) (dicta).

The final clause of McCoy's waiver says that the waiver applies "even if the Court rejects one or more positions advocated by the U.S. Attorney or Defendant with regard to the application of the U.S. Sentencing Guidelines." Perhaps this provision was in fact meant to foreclose review of all of the district judge's decisions as to how to apply the guidelines, whether mistaken or not. But it does not say so clearly; it is not the natural reading of the language; and it is hardly a reading that one would rush to embrace. And, with ambiguity in plea agreements construed against the government, United States v. Oladimeji, 463 F.3d 152, 157 (2d Cir. 2006); United States v. Somner, 127 F.3d 405, 408 (5th Cir. 1997) (per curiam), it is a reading we cannot accept.[4]

McCoy's primary argument on appeal--that he should receive credit against the loss suffered by the banks for those amounts that were later recouped by the banks through foreclosure or other means--is one that the district judge firmly rejected at sentencing. We review the district court's interpretation of the sentencing guidelines de novo; the factual findings on which it

---

[4] Broader appeal waivers, which could preclude the type of challenge McCoy attempts here, are not difficult to draft. E.g., United States v. Moyer, 2007 U.S. App. LEXIS 22225, at *2 (10th Cir. Sep. 17, 2007) (waiver reserved right to appeal "a sentence above the high end of the guideline range as determined by the district court at sentencing" (second emphasis added)); United States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000) (defendant waived right to appeal "on any ground whatever" unless "the Court in imposing a sentence departs . . . upward from the guideline range determined by the Court to be applicable to the Defendant" (emphasis added)).

based its determinations are reviewed only for clear error. United States v. Walker, 234 F.3d 780, 783 (1st Cir. 2000).

Under the guidelines, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. n.2(A). To the extent that actual loss is being calculated, that figure likely should exclude any amounts subsequently recovered by the victims. The guideline application notes instruct that in cases involving pledged collateral, "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or . . . the fair market value of the collateral at the time of sentencing" should be credited against the loss. Id. n.2(E)(ii); see also United States v. Kelley, 76 F.3d 436, 439 (1st Cir. 1996).

The application note accurately describes the calculation of actual loss, but it cannot be mechanically followed where intended loss is higher, and the courts have so recognized.[5] The guideline makes clear that intended loss--"expected" would be a better term--is to be used where it is higher than actual loss, that expectation being a measure for the defendant's culpability. United States v. Rostoff, 53 F.3d 398, 409 (1st Cir. 1995). And

---

[5]United States v. McCormac, 309 F.3d 623, 628-29 (9th Cir. 2002); United States v. Williams, 292 F.3d 681, 686 (10th Cir. 2002). Actual loss of course governs when it is the higher measure, as in many of McCoy's cited cases. And actual loss appeared to have been ordinarily controlling in fraudulent loan cases under a prior version of the guidelines, making much of McCoy's cited authority outdated, e.g., United States v. Lavoie, 19 F.3d 1102, 1105 (6th Cir. 1994). See U.S.S.G. § 2F1.1, cmt. n.7(b) (1991).

the district judge clearly indicated here that he was measuring intended loss.

Depending on the facts, intended loss could range from zero--<u>e.g.</u>, if the defendant sincerely intended and reasonably expected fully to repay the loan, United States v. Schneider, 930 F.2d 555, 559 (7th Cir. 1991)--to the entire value of the loan--<u>e.g.</u>, if the defendant attempted to conceal the collateral, McCormac, 309 F.3d at 628. As McCoy was obtaining loans for individuals with low income and poor credit, he could--and should--have expected that the banks would probably recover only the value of the mortgaged properties. Intended loss was therefore the value of the loans less the expected value of the properties.[6]

The district judge determined that the expected value of the properties at the time of the frauds was the price paid for the properties. The land-flipping in this case tended to occur rapidly, with homes being sold to new purchasers just weeks or even days after being purchased for use in the frauds. Thus, the purchase price paid by those engaged in the scheme was a reasonable proxy of the value of the collateral at the time that the frauds occurred; and a "reasonable estimate" is all that is necessary. U.S.S.G. § 2B1.1, cmt. n.2(C).

---

[6] See United States v. Alli, 444 F.3d 34, 38 (1st Cir. 2006) ("[A] person is presumed to have generally intended the natural and probable consequences of his or her actions."); cf. United States v. Morrow, 177 F.3d 272, 301 (5th Cir.) (per curiam), cert. denied sub nom. Cox v. United States, 528 U.S. 932 (1999).

Most of the properties appreciated after the frauds and before their post-foreclosure resale, but this does not alter the defrauders' reasonable expectations at the time that the frauds occurred. They had no knowledge of how long it would take before the innocent buyers defaulted and their properties were foreclosed on by lenders and resold. That this took long enough that some properties went up in market price (and others down) has nothing to do with culpability.

This brings us to the mathematical error made by the district judge in computing the loss figure under his own formula. In subtracting from the mortgage loans the prices paid by defendants for the mortgaged properties and then summing the differences, the district judge made a mathematical error. If the calculation had been performed correctly, the total loss figure would be under $400,000--as the government now concedes. That would reduce McCoy's total offense level and translate to a sentencing range of 33 to 41 months (assuming the downward adjustment in criminal history made by the judge).

But because McCoy did not object below (or, for that matter, in this court until we raised the matter <u>sua sponte</u>) any relief depends on a decision that the mistake constitutes plain error. <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 732 (1993). The first three components of the plain error test are rather easily satisfied on these facts: there was an error, it is plain enough

even though it passed at the time without notice, and--as correction produces a range <u>below</u> the sentence imposed--it probably altered the resulting sentence.[7]

What remains is the question whether leaving the error uncorrected would cause a miscarriage of justice, <u>United States</u> v. <u>Young</u>, 470 U.S. 1, 15 (1985), <u>i.e.</u> whether the error "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001). <u>Olano</u>, which is well established law, makes clear that the miscarriage requirement is in <u>addition</u> to a finding that there was error, that it is clear and that it likely altered the result.

In principle, one can imagine a mathematical error that had no likely effect on the sentence, <u>United States</u> v. <u>Keigue</u>, 318 F.3d 437, 446 (2d Cir. 2003), or was trivial, or was affirmatively induced by the defendant, or merely underlay a specific stipulated sentence. Even in this case, it is far from clear that the sentence was itself unjust: the plea bargain narrowed the number of counts, McCoy got a break on criminal history, and nothing in the loss calculus reflects the harm that may have been done to the borrowers themselves--only to the banks.

---

[7]Especially in the post-<u>Booker</u> era where the guidelines are merely advisory, it might turn out that the sentencing judge thought the sentence correct even with the guideline range clarified; but on the present facts there is no reason to think this is likely.

But there is something peculiarly uncomfortable about a conceded mathematical error which--as in this case--resulted in a sentence above the proper guideline maximum. And the additional time in jail was probably not trivial: from mid-range to mid-range is almost an extra year in jail. Under these circumstances, we exercise our discretion to remand for re-sentencing consistent with this decision.

It is so ordered.